# EXHIBIT A

Filing # 100577092 E-Filed 12/19/2019 12:22:32 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

LUCAS SILVA, individually and
on behalf of all others similarly situated,

     Plaintiff,           Case No.

v.

                           CLASS REPRESENTATION

JAMES RIVER INSURANCE COMPANY, a
Virginia corporation,

     Defendant.

_____/

### CLASS ACTION COMPLAINT

Plaintiff Lucas Silva ("Plaintiff"), individually and on behalf of all others similarly situated, hereby files this Class Action Complaint against Defendant James River Insurance Company ("James River" or "Defendant"), and alleges:

### NATURE OF THE ACTION

1.     This is a class action lawsuit brought by Plaintiff, the named insured under an automobile policy issued by James River for business auto physical damage, including comprehensive and collision coverage (the "Insurance Policy").[1] Under the Insurance Policy, Defendant is required to pay "Actual Cash Value" or "ACV" in the event Plaintiff's insured vehicle is declared a total loss.

2.     James River is a private insurance company that transacts insurance in the State of Florida. Among other coverages, Defendant offers comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid amounts owed not just to Plaintiff, but to approximately 1,000-2,000 other members of the putative Class (as fully defined below) in

---

[1] A true and correct copy of Plaintiff's Insurance Policy is attached hereto as Exhibit A.

payments made for total loss vehicles insured with comprehensive and collision coverage.

3.    This lawsuit is brought by Plaintiff, on behalf of himself and all other similarly situated insureds, against James River for damages suffered as a result of Defendant's failure to make full ACV payments to first-party total loss insureds with physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendant fails to include title transfer and registration transfer fees ("Transfer Fees").

4.    The failure to include payment for Transfer Fees in first-party total losses owed to its insureds is a breach of its policy agreement and a clear breach of contract under Florida law.

## JURISDICTION AND VENUE

5.    This is an action for breach of contract and declaratory relief for damages in excess of $15,000.00, exclusive of interest, costs, and attorney's fees.

6.    This Court has subject matter jurisdiction over this action pursuant to Sections 26.012 and 86.011, Florida Statutes (2019).

7.    Venue is proper in this Court pursuant to Sections 47.011 and 47.051, Florida Statutes (2019) because Defendant transacts business in Palm Beach County, Florida, where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## PARTIES

8.    At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Palm Beach County, Florida.

9.    At all times material hereto, Defendant is and was a corporation with a substantial portion of its business being conducted in Palm Beach County.

10.    This is an action for breach of contract and declaratory relief for damages.

11.    At all times material hereto, Plaintiff was an adult citizen of the State of Florida, residing in Palm Beach County, Florida.

12.    Plaintiff and members of the putative class are all insured under Florida policies issued by Defendant.

**FACTUAL ALLEGATIONS**

13.    Defendant's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Florida.

14.    At all times material hereto, Plaintiff owned a 2009 Toyota Corolla XRS, with VIN Number 1NXBE40E19Z018313 (the "Insured Vehicle").

15.    At all times material hereto, Plaintiff's Insured Vehicle was covered under the Insurance Policy.

16.    Under the Insurance Policy, in the event an insured vehicle is declared a total loss, the payment of ACV includes an obligation to pay title transfer fees of $75.25 and registration transfer fees of $4.60 ($79.85) ("Transfer Fees").

17.    On or about July 30, 2018, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim with Defendant for property damage, with Claim Number 90061868 (the "Claim").

18.    After the Claim was filed, Defendant determined the cost to repair the Insured Vehicle exceeded the ACV of the Insured Vehicle, and thus declared the Insured Vehicle to be a total loss. Defendant determined that the Insured Vehicle had a base value of $9,042.17 and an adjusted vehicle value of $8,822.21 after subtracting a condition adjustment of $219.96.

19.    The base value and adjusted vehicle value were calculated by a third-party vendor, Mitchell Work Center Total Loss ("Mitchell"). Mitchell's Market Valuation Report (the "Valuation Report") is attached hereto as Exhibit B.

20.    No amount for Transfer Fees was included in the amount listed in the Valuation

Report. Ex. B at 1.

21.     Relying on the Valuation Report, Defendant added a total of $579.33 for state and local sales taxes to the Insured Vehicle's adjusted vehicle value, and then subtracted Plaintiff's $1,000.00 deductible, for a total payment amount of $8,401.54, which did not include payment for Transfer Fees.

22.     Defendant's failure to include Transfer Fees amounts when making the total loss payment to Plaintiff is a breach of the Insurance Policy, which promises to provide the ACV of the total loss vehicle, including Transfer Fees amounts.

23.     Defendant, pursuant to its standard and uniform business practice, never pays its insureds the respective Transfer Fees owed after an insured vehicle is deemed a total loss.

24.     Defendant's failure to pay Transfer Fees constitutes a breach of the Insurance Policy.

25.     Transfer Fees are mandatory, applicable fees that must be paid to purchase any vehicle in the State of Florida.

26.     Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The minimum fee to transfer title to a vehicle in the state of Florida is $75.25.

27.     Florida law also requires that all vehicles have a proper license plate (or tag) in order to be legally driven on Florida' roadways. The minimum fee to transfer registration in the state of Florida is $4.60.

28.     After determining that Plaintiff's Insured Vehicle, as well those of other similarly situated insureds, was a total loss, Defendant owed Transfer Fees in the amount of $79.85 that were never subsequently paid.

29.     In breach of its contract with Plaintiff, Defendant did not include Transfer Fees in

the amount of $79.85 when it made the ACV payment for Plaintiff's FTLP.

30.     In doing so, Defendant underpaid Plaintiff in the amount of the mandatory costs and fees necessary to purchase a replacement vehicle, thereby violating its own policy by failing to provide coverage for such mandatory, necessary fees.

31.     Plaintiff and all members of the putative Class paid all premiums owed under their respective insurance policies with James River and otherwise satisfied all conditions precedent, or such conditions precedent were waived or excused, prior to bringing this action against Defendant.

## JAMES RIVER'S INSURANCE POLICY

32.     In Section II of Plaintiff's Insurance Policy, entitled "PHYSICAL DAMAGE COVERAGE," which is representative of the policy language governing the thousands of insureds in the putative Class, Defendant states, in pertinent part, that Defendant "will pay for 'loss' to a covered 'auto'." Ex. A at 2.

33.     Under the subsection entitled "Limit of Insurance" in Part II of the Insurance Policy, Defendant states, in pertinent part, that:

The most we will pay for "loss" in any one "accident" is the lesser of:

    a.   The actual cash value of the damaged or stolen property as of the time of "loss"; or
    b.   The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

Ex. A at 3.

34.     The Policy asserts that covered autos are those for which a premium is paid and is listed on the dec sheet.

35.     James River does not define ACV in the Insurance Policy or any other policy or provision at issue.

36.     Thus, the subject policy language does not further define ACV to include: (1) any

provision excluding Transfer Fees from ACV; or (2) any provision deferring payment of Transfer Fees for any purpose whatsoever.

37.     The Insurance Policy's language applies to all covered automobiles, irrespective of ownership interests—whether the insured vehicles are owned, financed, or leased. Ex. A at 1-2.

## PAYMENT OF MANDATORY FEES

38.     Controlling case law from the Florida Supreme Court, Florida's appellate courts, the Eleventh Circuit Court of Appeals, and Florida's federal district courts hold that the term "actual cash value," when undefined in an Insurance Policy, means "market value" and is measured as the repair or replacement cost minus depreciation—a definition that would include the Transfer Fees necessarily incurred upon replacement of the insured vehicle. *See e.g., Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (holding that "[a]ctual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence, or age.'") (quoting Black's Law Dictionary 506, 1690) (9th Ed. 2009); *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008) (noting that undefined ACV is calculated as full replacement cost minus depreciation); *Mills v Foremost Ins. Co.*, 511 F.3d 1300, 1306 (11th Cir. 2008) (holding that elements like sales tax "should be included in an ACV payment if it is 'reasonably likely' that the insured would incur" such cost upon replacement) (quoting *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001)); *Roth v. Geico Gen. Ins. Co.*, 16-cv-62942 (S.D. Fla. June 14, 2018), D.E. 247 at 9 ("[T]he court concludes that [sales tax and title transfer fees] are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.") (footnote omitted); *Bastian v. United Services Auto. Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (agreeing with the Eleventh Circuit's "easily reached conclusion [in Mills] that

6

state and local taxes are part of the cost of replacing an item" and thus should be included in the calculation of the ACV).

39.     Transfer Fees are examples of elements constituting the ACV owed to insureds in the event of a total loss.

40.     By promising to pay the ACV of insured vehicles, the Policy promises coverage for Transfer Fees, because such fees are necessary to replace a vehicle in the state of Florida.

41.     By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle. Otherwise, the Defendant's insureds, including Plaintiff, are not paid the amount sufficient to purchase a replacement vehicle. Thus, the coverage provided by the Policy requires payment of $79.85 for title and registration transfer fees.

42.     Nevertheless, Defendant declined to include such fees in making ACV payments to total loss insureds, thereby breaching its respective contracts with its insureds, including each and every putative Class Member.

43.     Plaintiff's disagreements and allegations stated herein, individually and on behalf of the Class, do not concern the amount of loss, nor does Plaintiff contest Defendant's determination that the loss was sufficient to constitute a total-loss. Plaintiff does not contest that ACV is the relevant limitation on liability. Although Plaintiff does not have Defendant's internal documents and does not know the amount Defendant determined to constitute the loss, Plaintiff accepts Defendant's determination that the vehicle was a "total" loss and that Defendant's liability is limited to the ACV of the total-loss vehicle.

44.     Rather, the disagreement between the Parties concerns simply whether ACV should be interpreted such that it provides coverage for and requires payment of title and registration transfer fees as costs necessary to replace the total-loss vehicle.

## CLASS REPRESENTATION ALLEGATIONS

45.     Plaintiff brings this action seeking representation of a class pursuant to Fla R. Civ. P. 1.220.

46.     Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies.

47.     Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

48.     Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of Rule 1.220(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 1.220(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

49.     Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to make a FTLP upon the total loss of insured vehicles.

50.     Plaintiff and Plaintiff's counsel will fairly and adequately protect and represent the interests of each member of the class.

51.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached

contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

52.     Pursuant to Rule 1.220(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

53.     Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any Florida policy issued by James River Insurance Company and its subsidiaries who submitted a first-party claim for property damage where the insured vehicle was determined to be a total loss and whose claim was adjusted as a total loss within the five-year time period prior to the date on which this lawsuit was filed until the date of class certification, and who were not paid Transfer Fees of at least $79.85 as part of the total-loss claim payment.

54.     The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

55.     Certification of the above classes is also supported by the following considerations:

> a.  The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;
> b.  Counsel in this class action is not aware of any previously filed litigation against Defendant in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and
> c.  No difficulties would be encountered in the management

> of Plaintiff's claim on a class action basis, because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

56.     Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Defendant has provided evidence demonstrating that the amount of putative class members is approximately 1,000-2,000. Thus, numerosity as to the Class is established.

57.     Rule 1.220(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendant's standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

58.     Rule 1.220(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

59.     Rule 1.220(b)(3)'s requirements are met for all reasons already stated herein. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class

treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## DECLARATORY RELIEF

60.     Under Florida Rule of Civil Procedure 1.220(b)(2), class treatment is warranted here because Defendant acted or refused to act on grounds generally applicable to all the members of the putative Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

61.     Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief are brought efficiently, provides optimum relief to class members for their past and future injuries, and deters Defendant and other similar businesses from engaging in such wrongful conduct in the future.

62.     Because Defendant acted consistently towards Plaintiff and all members of the putative Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

63.     Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

64.     Plaintiff retained the undersigned counsel and agreed to pay reasonable attorney's fees and costs in connection with this action. Plaintiff, for himself and the putative Class, is entitled to recover attorney's fees pursuant to Section 627.428, Florida Statutes and taxable costs pursuant

to Section 57.041, Florida Statutes.

## COUNT I
### BREACH OF CONTRACT

65.     The allegations in paragraph 1 through 64 are hereby incorporated by reference.

66.     This count is brought by Plaintiff on behalf of himself and all members of the putative Class.

67.     Plaintiff was party to an enforceable contract, the Insurance Policy, with Defendant as described herein. *See* Ex. A. At all times material hereto, all members of the putative Class were also parties to similar contracts with Defendant that contained materially identical terms to the Insurance Policy.

68.     Florida law governs the interpretation and construction of the insurance policies of Plaintiff and all members of the Class with Defendant.

69.     Plaintiff and all members of the putative Class made claims that Defendant determined to be covered first party total losses under their perspective insurance policies.

70.     Defendant, in paying the total loss claim, determined that Plaintiff and each Class member complied with the terms of their respective insurance contract and fulfilled all duties and conditions under the same that were necessary to be paid on their total loss class.

71.     By determining the vehicles to be total-losses, Defendant determined that, under its Policy, Defendant's liability for loss was the ACV of the total-loss vehicle.

72.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class member were owed the ACV of the vehicle.

73.     Defendant breached that obligation by failing to include Transfer Fees as elements of ACV, thereby failing to pay the vehicle's ACV to Plaintiff and all members of the Class.

74.     Defendant's failure to provide the promised coverage and failure to pay title

12

transfer fees of $75.25 and registration transfer fees of $4.60 constitutes a material breach of contracts with Plaintiff and every Class member.

75.    As a result of the foregoing breaches, Plaintiff and the Class members are entitled under Defendant's insurance policies to sums representing the benefits owed for full ACV payment, including Transfer Fees in the amount of $79.85 (less any amount paid by Defendant for Transfer Fees), as well as pre-judgment and post- judgment interest, and any other relief the Court deems appropriate.

## COUNT II
## DECLARATORY RELIEF

76.    The allegations in paragraph 1 through 64 are hereby incorporated by reference.

77.    This count seeks declaratory relief pursuant to Chapter 86, Florida Statutes.

78.    This count is brought by Plaintiff on behalf of Plaintiff and all members of the Class.

79.    Plaintiff was party to a contract, the Insurance Policy, with Defendant as described herein.   See Exhibit A. All Class Members were parties to an Insurance Policy contract with Defendant containing materially identical terms.

80.    Florida law governs the interpretation and construction of Plaintiff and all Class members' insurance policies with Defendant.

81.    Plaintiff seeks a declaratory judgment that an insured is entitled to vehicle title and registration transfer fees to pay a vehicle's ACV under the insurance policies that govern Plaintiff's and the class members' contractual relationships with Defendant.

82.    Plaintiff contends Defendant is required to pay vehicle title and registration transfer fees as part of the payment of a vehicle's ACV under the insurance policies that govern Plaintiff and the Class members relationship with Defendant.

13

83.     Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

84.     Because of Defendant's claim to the contrary, Plaintiff is in doubt as to his rights under the Insurance Policy.

85.     The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to entitlement to the vehicle title and registration transfer fees.

86.     The above allegations reflect that Plaintiff has presented a justiciable question as to the existence of his right to the vehicle title and registration transfer fees.

87.     All antagonistic and adverse interests, namely Plaintiff and Defendant and the Class when certified, are before this Court by the filing of this count.

88.     Pursuant to Section 86.021, Florida Statutes, Plaintiff is entitled to a declaration of Plaintiff's rights to vehicle title and registration transfer fees to resolve his doubt about her rights under the Insurance Policy considering the Defendant's position otherwise.

89.     Upon the Court granting Plaintiff the declaratory relief requested herein, Plaintiff will move the Court pursuant to Section 86.061, Florida Statutes for supplemental relief in the form of an order directing that the vehicle title and registration transfer fees be paid to Plaintiff, and the Class, if certified, as well as a judgment for prejudgment interest and post-judgment interest, as the vehicle title and registration transfer fees represents a liquidated amount.

WHEREFORE, the Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks relief and judgement as follows:

1.     For an Order certifying this action as a Class Action on behalf of the Class described above;

2.      For an award of compensatory damages for the Class in amounts owed under the Policies, including $79.85 in Transfer Fees (less any amount already paid by Defendant for Transfer Fees);

3.      For declaratory relief to be entered for Plaintiff and the Class that her interpretation of the Insurance Policy is correct;

4.      For all other damages according to proof;

5.      For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. §627.428 and Fla. Stat. §57.041;

6.      For costs of suit incurred herein;

7.      For pre and post judgment interest on any amounts awarded;

8.      For other forms of relief as this Court deems just and proper;

Dated: December 19, 2019

Respectfully Submitted By:

*/s/ Andrew Shamis*
**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Tel (305) 479-2299
Fax: (786) 623-0915

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223
rachel@dapeer.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com

15

20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Tel: (305) 975-3320

**NORMAND PLLC**
Jacob L. Phillips, Esq.
FBN: 120130
Edmund A. Normand, Esq.
FBN: 865590
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407.603.6031
jacob.phillips@normandpllc.com
ed@ednormand.com
service@normandpllc.com

*Counsel for Plaintiff*

**EXHIBIT A**

NOT A CERTIFIED COPY

# FAX COVER SHEET

| TO | |
| --- | --- |
| COMPANY | |
| FAX NUMBER | 17866230915 |
| FROM | Hare, Kelley |
| DATE | 2019-09-10 20:53:15 GMT |
| RE | Claim 90061868 for Lucas Silva |

## COVER MESSAGE

Please see all of the requested documents.

Regards,

Kelley Hare
Claims Examiner
James River Insurance Company
P.O. Box 27648, Richmond, VA 23261
Phone: 804-287-3715 | Fax: 804-265-1444
Email: Kelley.Hare@jamesriverins.com

NOT A CERTIFIED COPY

## Packages

| PWR PKG |
| --- |
| inc: pwr door locks, pwr windows w/driver 1 touch down, remote keyless entry |

## Optional Equipment

| 4 PIECE ALL WEATHER FLOOR MATS | JBL AM/FM STEREO W/6 DISC IN DASH CD CHANGER |
| --- | --- |
| REAR SPOILER | TILT/SLIDE PWR MOONROOF |

*DIO/PIO= Dealer/Port Installed Option

## Loss Vehicle Base Value

Loss vehicle:    **2009 Toyota Corolla XRS 4 Door Sedan 2.4L 4 Cyl Gas M FWD**

### Comparable Vehicle Information

Search Radius used for this valuation:          **75 miles from loss vehicle zip/postal code.**
      Typical Mileage for this vehicle:          **89,000 miles**

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 2009 TOYOTA COROLLA XRS 4D SDN 4 2.4NORMAL GAS M 2WD | 106,181 | 32794 | 12 miles | $9,595.00 List Price | $9,544.32 |
| 2 | 2009 TOYOTA COROLLA XRS 4D SDN 4 2.4NORMAL GAS A 2WD | 92,388 | 34748 | 40 miles | $8,850.00 List Price | $7,915.35 |
| 3 | 2009 TOYOTA COROLLA XRS 4D SDN 4 2.4NORMAL GAS M 2WD | 107,951 | 34475 | 71 miles | $8,995.00 List Price | $9,666.84 |
|  |  |  |  |  | Base Value: | $9,042.17 |

## Loss Vehicle Adjustments

Loss vehicle:    **2009 Toyota Corolla XRS 4 Door Sedan 2.4L 4 Cyl Gas M FWD**

### Condition Adjustments

| Condition Adjustment:   -$219.96 | Overall Condition:  2.90-Good | Typical Vehicle Condition:   3.00 |
| --- | --- | --- |

| Category | Condition | | Comments |
|---|---|---|---|
| **Interior** | | | |
| DASH/CONSOLE | 3 Good | | LOSS RELATED DAMAGE ONLY |
| CARPET | 2 Fair | | SIGNIFICANT WEAR AND FADING |
| HEADLINER | 2 Fair | | SOME SCUFFS |
| SEATS | 3 Good | | MINIMAL WEAR |
| GLASS | 3 Good | | LOSS RELATED DAMAGE ONLY |
| DOORS/INTERIOR PANELS | 2 Fair | | SCRATCHES AND SCUFFS ON DOOR SILLS/TRIM |
| **Exterior** | | | |
| PAINT | 3 Good | | NO VISIBLE SIGNIFICANT PRIOR DAMAGE |
| TRIM | 3 Good | | NO VISIBLE SIGNIFICANT PRIOR DAMAGE |
| BODY | 3 Good | | MINOR DINGS ONLY |
| VINYL/CONVERTIBLE TOP | Typical | | NOT APPLICABLE |
| **Mechanical** | | | |
| ENGINE | 3 Good | | COMPONENTS INTACT, NO OBVIOUS LEAKS, MINIMAL WEAR |
| TRANSMISSION | Typical | | NO ACCESS |
| **Tire** | 3 Good | | LF 9/32, LR 8/32, RR 8/32, RF MISSING. 76 PERCENT AVERAGE. |

Typical condition reflects a vehicle that is in ready-for-sale condition and reflects normal wear and tear for that vehicle type / age.

**Comments:**

---

## Comparable Vehicles

Loss vehicle:   **2009 Toyota Corolla XRS 4 Door Sedan 2.4L 4 Cyl Gas M FWD**

**Comparable Vehicles**

NOT A CERTIFIED COPY

| 1 | 2009 TOYOTA COROLLA XRS 4D SDN 4 2.4 NORMAL GAS M2WD | | | List Price: $9,595.00 |
|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | 1NXBE40E29Z001410 | | | | |
| Stock No: | GW287096A | Projected Sold Adjustment | | | -$889.00 |
| Listing Date: | 07/04/2016 | Mileage | 89,000 | 106,181 | -$610.26 |
| ZIP/Postal Code: | 32771 | Equipment | | | |
| Distance from Loss Vehicle: | 12 miles | 4-PIECE ALL-WEATHER FLOOR MATS | Yes | No | $45.70 |
| | | REAR SPOILER | Yes | No | $182.34 |
| Source: | DEALER WEB LISTING - CARS.COM | | | | |
| | DAVID MAUS TOYOTA SCION | | | Total Adjustments: | -$50.68 |
| | 1160 RINEHART RD | | | Adjusted Price: | $9,544.32 |
| | SANFORD FL 32771 | | | | |
| | 866-898-2820 | | | | |

Comparable Vehicle Package Details:
PWR PKG

Comparable Vehicle Option Details:
JBL AM/FM STEREO W/6-DISC IN-DASH CD CHANGER, TILT/SLIDE PWR MOONROOF

| 2 | 2009 TOYOTA COROLLA XRS 4D SDN 4 2.4 NORMAL GAS A2WD | | | List Price: $8,850.00 |
|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | 2T1BE40E49C026634 | | | | |
| Stock No: | 9C026634 | Projected Sold Adjustment | | | -$820.00 |
| Listing Date: | 07/20/2016 | Vehicle Configuration Adjustment | | | -$421.50 |
| ZIP/Postal Code: | 34748 | Mileage | 89,000 | 92,398 | $105.49 |
| Distance from Loss Vehicle: | 40 miles | Equipment | | | |
| | | PWR PKG | Yes | Yes | $1.86 |
| Source: | DEALER WEB LISTING - CARS.COM | 4-PIECE ALL-WEATHER FLOOR MATS | Yes | No | $39.94 |
| | J&M AFFORDABLE AUTO INC. | REAR SPOILER | Yes | No | $159.36 |
| | 1526 US HIGHWAY 441 | | | | |
| | LEESBURG FL 34748 | | | Total Adjustments: | -$934.65 |
| | 352-267-2356 | | | Adjusted Price: | $7,915.35 |

Comparable Vehicle Package Details:
PWR PKG

Comparable Vehicle Option Details:
JBL AM/FM STEREO W/6-DISC IN-DASH CD CHANGER, TILT/SLIDE PWR MOONROOF

NOT A CERTIFIED COPY

Mitchell WorkCenter
**Total Loss**

| 3 | 2009 TOYOTA COROLLA XRS 4D SDN 4 2.4 NORMAL GAS M2WD | | | | List Price: $8,995.00 |

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | 1NXBE40E59Z029962 | Projected Sold Adjustment | | | -$833.00 |
| Stock No: | 099962 | Mileage | 89,000 | 107,951 | $651.00 |
| Listing Date: | 07/10/2016 | Equipment | | | |
| ZIP/Postal Code: | 34475 | PWR PKG | Yes | No | $274.81 |
| Distance from Loss Vehicle: | 71 miles | 4-PIECE ALL-WEATHER FLOOR MATS | Yes | No | $42.84 |
| Source: | DEALER WEB LISTING - CARS.COM | REAR SPOILER | Yes | No | $170.84 |
| | ALLIANCE MOTORS | TILT/SLIDE PWR MOONROOF | Yes | No | $385.16 |
| | 855 N PINE AVE | | | | |
| | OCALA FL 34475 | | | Total Adjustments: | $671.84 |
| | 352-361-6684 | | | Adjusted Price: | $9,666.84 |

**Comparable Vehicle Option Details:**

JBL AM/FM STEREO W/6-DISC IN-DASH CD CHANGER

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2009 Toyota Corolla XRS | 4 Door Sedan 2.4L 4 Cyl Gas FWD | $18,860.00 |
| 2009 TOYOTA COROLLA XRS | 4D SDN 4 2.4 NORMAL GAS A 2WD | $20,050.00 |
| | | |

NOT A CERTIFIED COPY

## Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was built through a joint partnership between J.D. Power and Associates vehicle valuation division Power Information Network (P.I.N.) and Mitchell International, a leading provider of claims processing solutions to private passenger insurers.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles similar to the loss vehicle in the same market area. WorkCenter Total Loss finds these vehicles in AutoTrader.com, Cars.com, Vast.com and directly from dealerships.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).
- Vehicle Configuration Adjustment- an adjustment for differences in configuration between the comparable vehicle and the loss vehicle (e.g. differences in trim).
- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.
- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.

NOT A CERTIFIED COPY



# NOTICE:

1.    THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2.    THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3.    THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4.    THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT  THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.

5.    FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6.    FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL

INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA D E PARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

D-2 (Effective July 21, 2011)

# BUSINESS AUTO PHYSICAL DAMAGE DECLARATIONS



JAMES RIVER INSURANCE COMPANY
6641 WEST BROAD STREET
SUITE 300
RICHMOND, VA  23230

**JAMES RIVER INSURANCE**

Policy Number: CA436300CA-01

**ITEM ONE**

| Named Insured: | Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, RAsier-PA LLC | Mailing Address: | 1455 Market Street, 4th Floor San Francisco, CA  94103 |
|---|---|---|---|

**Policy Period:**

| From: | 3/1/2016 | |
|---|---|---|
| To: | 3/1/2017 | At 12:01 AM Standard Time at your mailing address shown above |

**Form Of Business:**

| ☐ Corporation | ☒ Limited Liability Company | ☐ Individual |
|---|---|---|
| ☐ Partnership | ☐ Other: | |

| Premium shown is payable at inception: | $ ▓▓▓▓ |
|---|---|

| Audit Period (If Applicable): | ☐ Annually | ☐ Semiannually | ☐ Quarterly | ☒ Monthly |
|---|---|---|---|---|

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE APPLICATION(S) AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**ITEM TWO**
**Schedule of Coverages and Covered Autos**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | Limit The Most We Will Pay for Any One Accident or Loss | Premium |
|---|---|---|---|
| Physical Damage Comprehensive Coverage | Symbol 4 | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ 1,000  Deductible For Each Covered Auto, But No Deductible Applies to Loss Caused By Fire or Lightning | ▓▓▓▓ |
| Physical Damage Specified Causes of Loss Coverage | Not Applicable | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $         Deductible For Each Covered Auto, for  Loss Caused By Mischief or Vandalism | $ Not covered |
| Physical Damage Collision Coverage | Symbol 4 | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ 1,000 deductible For Each Covered Auto | $ Included |

**ITEM THREE - Schedule of Covered Autos - Physical Damage**

Vehicles designated in the Schedule below are covered "autos" but only for the Physical Damage Coverage where a premium is shown on the Declarations and only for the Limit(s) designated in the Declarations for such premium charge.

NOT A CERTIFIED COPY

**Schedule of Designated Vehicles**

Symbol 4 =

Any passenger "auto" while being used by a "Rideshare Driver", in connection with the "UberPartner application" accessed using account credentials issued under a contract with a Named Insured, provided any of the following:

    a. The "Rideshare Driver" has logged and recorded acceptance in the "UberPartner application" of a request to provide transportation services, and the "Rideshare Driver" is:

    1) En route to the pick-up location of the requested transportation services including, but not limited to picking-up of passenger(s) or

    2) Traveling to the final destination of the requested transportation services including, but not limited to dropping –off passenger(s).

| | | |
|---|---|---|
| | Premium From Endorsements | $ |
| | Estimated Total Premium | $ ██████████ |
| If checked, premium shown is flat and not subject to audit ☐ | Surplus Lines Tax | $ ██████████ |
| | Stamping Fee | $ ██████ |
| TOTAL SHOWN IS PAYABLE AT INCEPTION | | ██████████ |
| AUDITABLE:  RATE: ████████████████ | | |

**ENDORSEMENTS**

ENDORSEMENTS ATTACHED TO THIS POLICY:

    See attached schedule A – Schedule of Forms

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.



NOT A CERTIFIED COPY

# SCHEDULE A

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO.   CA436300CA-01**

| FORM NUMBER | TITLE |
|---|---|
| **Mandatory Forms** | |
| JA2004US 01 14 | Business Auto Physical Damage Declarations |
| JA0001US 10 14 | Business Auto — Schedule A |
| CA  00  10 03 10 | Business Auto Physical Damage Coverage Form |
| JA5401US 03 13 | Common Policy Conditions |
| JA5403US 01 14 | Premium Audit Conditions Amended |
| CA  23 84  10 13 | Exclusion - Terrorism |
| **ISO Forms** | |
| | |
| | |
| **Additional Interests & Waiver of Subrogation** | |
| | |
| **Limitations** | |
| JA5325US 02-16  Limitation of Coverage to State – Rides Originating | |
| | |
| **Exclusions** | |
| JA5619US 02-16 Exclusion of Liability – Exclusion of Liability – Other Auto Physical Damage Insurance Policies | |
| | |
| **State Mandatory Forms** | |
| AP5048US 04-10 California-Service of Suit | |
| | |
| **UM/UIM/PIP Forms** | |
| | |
| | |
| **Other Forms** | |
| JA5316US 02-16  Transportation Network Company, Transportation Network Partner, Rideshare Driver Endorsement | |
| | |

NOT A CERTIFIED COPY

# BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **IV** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Owned "Autos" Only | Only those "autos" you own. This includes those "autos" you acquire ownership of after the policy begins. |
| 2 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 3 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type. This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 4 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown. |
| 5 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2 or 3** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But if Symbol **4** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## SECTION II – PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an insured becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

---

**b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**3.** Exclusions **2.c.** and **2.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**4.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**5.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

**c.** An integral part of that equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION III – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "loss", you must give us or our authorized representative prompt notice of the "loss". Include:

**(1)** How, when and where the "loss" occurred; and

**(2)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at your own cost.

**(2)** Cooperate with us in the investigation or settlement of the claim or defense against the suit.

**(3)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(4)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(5)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(6)** Agree to examination under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form.

**4. Loss Payment**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the Named Insured or the Named Insured's estate will not relieve us of any obligations under this coverage form.

**2. Concealment, Misrepresentation Or Fraud**

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This coverage form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this coverage form.

**3. Liberalization**

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

a. The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico; and

(4) Canada; and

(5) Anywhere in the world if:

  (a) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

  (b) The insured's responsibility to pay damages is determined in a suit on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to a covered "auto" while being transported between any of these places.

### SECTION IV – DEFINITIONS

A. "Auto" means:

1. A land motor vehicle, trailer or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

B. "Loss" means direct and accidental loss or damage.

C. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

D. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

E. "Leased worker" means a person leased to you by a labor leasing firm, under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

F. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  a. Power cranes, shovels, loaders, diggers or drills; or

  b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**G.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

NOT A CERTIFIED COPY

© Insurance Services Office, Inc., 2009   CA 00 10 03 10   ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS

All Coverage Parts in this policy are subject to the following Conditions.

1. **CANCELLATION AND NON-RENEWAL**

    **A.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **B.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **C.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **D.** Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

    **E.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata unless cancellation is due to non payment of premium, in which case the refund may be less than pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **F.** If notice is mailed, proof of mailing will be sufficient proof of notice.

    If we elect not to renew this policy, we shall mail written notice to the First Named Insured at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least 30 days prior to the end of the policy term.

2. **CHANGES**

    This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

3. **REPRESENTATIONS**

    By accepting this policy, you agree:

    A.   The statements in the Declarations are accurate and complete;

    B.   Those statements are based upon representations you made to us; and

    C.   We have issued this policy in reliance upon your representations.

4. **SERVICE OF SUIT**

    It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

    It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at the address shown on the Declarations page of this policy, and that in any suit instituted against any one of them upon this policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

JA5401US 03-13                                  Page 1 of 2

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**5. TERMS, CONDITIONS AND PREMIUM**

On each renewal, continuation, anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and/or amend the terms and conditions in accordance with the rates and rules then in effect.

**6. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless signed by duly authorized representatives of this Company.

*VICE PRESIDENT*                                                      *PRESIDENT*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT CONDITIONS AMENDED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

**SECTION III—BUSINESS AUTO CONDITIONS**, subsection **B. General Conditions**, Item **6. Premium Audit** is replaced with the following:

**6. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. We have the right, but not the obligation, to conduct a physical audit of records needed for premium computation after the expiration of this policy.

    **d.** The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the difference, if any.  However, the final premium due will never be less than the estimated total premium.

    **e.** Your refusal to maintain or provide needed records, or to allow us to conduct a physical audit of needed records, will result in our developing and calculating a final audit premium based on information available to us and without your cooperation. If final premium audits calculated without your cooperation result in additional premium, you are obligated to pay such additional premium.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**



COMMERCIAL AUTO
CA 23 84 10 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

  **a.** That involve the following or preparation for the following:

    **(1)** Use or threat of force or violence; or

    **(2)** Commission or threat of a dangerous act; or

    **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

  **b.** When one or both of the following apply:

    **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

C. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage — Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

 © Insurance Services Office, Inc., 2013 CA 23 84 10 13

To: Case 9:20-cv-80058-DMM Document 2019:09-120:05:37 (GMT)LSD Docket 04/17/2020 Page 41 of 53 Kelley

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.**, coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.



NOT A CERTIFIED COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRANSPORTATION NETWORK COMPANY/ TRANSPORTATION NETWORK PARTNER, RIDESHARE DRIVER ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Covered "autos" are specifically included under all coverage parts shown in the Declarations and any coverage forms for Uninsured Motorist, Underinsured Motorist, Personal Injury Protection or other endorsed first party compulsory coverage specific to the state or jurisdiction in which a ride originated regardless of where that covered "auto" is registered or principally garaged.

The following definitions are added to **SECTION V – DEFINITIONS**

**O.** "Rideshare Driver" means an individual that is operating a motor vehicle in connection with the use of an "UberPartner application" that has entered into a contract with a "transportation network company" or (TNC).

**P.** "Transportation Network Company" (or TNC) means an entity which uses a proprietary digital network to connect passengers to drivers for the purposes of providing transportation.

**Q.** "UberPartner application" means any smartphone application licensed by a subsidiary of Uber Technologies Inc. which is utilized by a "Rideshare Driver" to receive request for transportation from passengers.

**SECTION III – BUSINESS AUTO CONDITIONS B.5. OTHER INSURANCE** is deleted and replaced with the following:

**5. Other Insurance**

For any covered "auto", the insurance provided by this coverage form shall only apply if the "auto" driven by the Rideshare Driver at the time of "loss" was insured for Collision and/or Comprehensive Coverage under any:

1. Personal auto insurance policy that includes the "rideshare driver" as an insured; or
2. Personal auto insurance policy that includes the "auto" driven by the "rideshare driver" as a covered "auto".

For any covered "auto", the insurance provided by this coverage form shall only apply if all other insurance that protects a lienholder's financial interest in the covered "auto" at the time of "loss" is exhausted. This includes but is not limited to any personal auto insurance policy naming the lienholder as a loss payee, collateral protection insurance, borrower payment protection insurance, lender placed insurance, or vendor single interest insurance.

**SECTION II – PHYSICAL DAMAGE COVERAGE, A., 2. Towing** is deleted and replaced with the following:

**2. Towing**

We will pay up to $500 for towing costs incurred from each "loss" to a covered "auto".

**SECTION II – PHYSICAL DAMAGE COVERAGE, A., 4. Coverage Extensions a. Transportation Expenses** and **b. Loss of Use Expenses** are deleted in their entirety.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BUSINESS AUTO PHYSICAL DAMAGE DECLARATIONS – ITEM ONE**

The following are added as Named Insureds in addition to the "transportation network companies" shown on the DECLARATIONS.

1. All "rideshare drivers";
2. The owners, lessors and lien holders shown on the title of ownership of all covered autos operated by a "rideshare driver".

Notwithstanding anything in this endorsement, the first named insured shown on the Declarations shall be the first "transportation network company" shown on the Declarations.



**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

NOT A CERTIFIED COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LIABILITY – OTHER COMMERCIAL AUTO PHYSICAL DAMAGE INSURANCE POLICIES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement the provisions of the Coverage Form apply unless modified by the endorsement.

This insurance does not apply to any claim or "suit" which is covered by any other Non-liability physical damage insurance policies issued to the Named Insured, as shown in the declarations, or any other subsidiary of Uber Technologies Inc. by either James River Insurance Company, James River Casualty Company, or any other insurer except for any:

1. Excess automobile liability policy that schedules this policy as underlying insurance; or

2. Business Auto insurance policy.

This exclusion applies to any claim or "suit" which is covered or would have been covered under the non-liability physical automobile damage insurance policies issued to the Named Insured, as shown in the declarations, or any other subsidiary of Uber Technologies Inc. by either James River Insurance Company, James River Casualty Company, or any other insurance company but for the exhaustion of limits, exclusion(s), or, cancellation or expiration of such policies.

If more than one policy issued by either James River Insurance Company or James River Casualty Company provides coverage to the same "insured" in the same claim or "suit", only the policy providing the broadest coverage to the "insured" will apply to the claim or "suit".

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

NOT A CERTIFIED COPY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO STATE – RIDES ORIGINATING

This endorsement modifies insurance provided under the following:

NOT A CERTIFIED COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA - SERVICE OF SUIT

This endorsement modifies and amends insurance provided under the following:

ALL COVERAGE PARTS

Pursuant to California statutes, this Company designates the following as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance:

> CSC – Corporation Service Company
> Karen Harris
> 2710 Gateway Oaks Drive, Suite 150N
> Sacramento, CA 95833
>
> Phone # 800-927-9800
> Fax # 916-641-5151

The above-named is authorized and directed to accept service of process on behalf of the Company.



**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

# BUSINESS AUTO PHYSICAL DAMAGE DECLARATIONS



JAMES RIVER INSURANCE COMPANY
6641 WEST BROAD STREET
SUITE 300
RICHMOND, VA 23230

**JAMES RIVER INSURANCE**

**Policy Number: CA436300CA-01**

## ITEM ONE

| Named Insured: | Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, RAsier-PA LLC | Mailing Address: | 1455 Market Street, 4th Floor San Francisco, CA 94103 |
|---|---|---|---|

| Policy Period: | | |
|---|---|---|
| **From:** | 3/1/2016 | |
| **To:** | 3/1/2017 | At 12:01 AM Standard Time at your mailing address shown above |

**Form Of Business:**

| ☐ Corporation | ☒ Limited Liability Company | ☐ Individual |
|---|---|---|
| ☐ Partnership | ☐ Other: | |

| Premium shown is payable at inception: | ███████████ |
|---|---|

| Audit Period (If Applicable): | ☐ Annually | ☐ Semiannually | ☐ Quarterly | ☒ Monthly |
|---|---|---|---|---|

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE APPLICATION(S) AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## ITEM TWO
### Schedule of Coverages and Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | Limit The Most We Will Pay For Any One Accident or Loss | Premium |
|---|---|---|---|
| **Physical Damage Comprehensive Coverage** | Symbol 4 | Actual Cash Value or Cost of Repair, Whichever Is Less, Minus $1,000 Deductible For Each Covered Auto, But No Deductible Applies to Loss Caused By Fire or Lightning | ████ |
| **Physical Damage Specified Causes of Loss Coverage** | Not Applicable | Actual Cash Value or Cost of Repair, Whichever Is Less, Minus $ Deductible For Each Covered Auto, for Loss Caused By Mischief or Vandalism | ████ |
| **Physical Damage Collision Coverage** | Symbol 4 | Actual Cash Value or Cost of Repair, Whichever Is Less, Minus $1,000 deductible For Each Covered Auto | ████ |

### ITEM THREE - Schedule of Covered Autos - Physical Damage

Vehicles designated in the Schedule below are covered "autos" but only for the Physical Damage Coverage where a premium is shown on the Declarations and only for the Limit(s) designated in the Declarations for such premium charge.

NOT A CERTIFIED COPY

**Schedule of Designated Vehicles**

Symbol 4 ☰

Any passenger "auto" while being used by a "Rideshare Driver", in connection with the "UberPartner application" accessed using account credentials issued under a contract with a Named Insured, provided any of the following:

   a. The "Rideshare Driver" has logged and recorded acceptance in the "UberPartner application" of a request to provide transportation services, and the "Rideshare Driver" is:

   1) En route to the pick-up location of the requested transportation services including, but not limited to picking-up of passenger(s) or

   2) Traveling to the final destination of the requested transportation services including, but not limited to dropping –off passenger(s).



| | Premium From Endorsements | |
|---|---|---|
| | Estimated Total Premium | |
| | Surplus Lines Tax | |
| | Stamping Fee | |

| **ENDORSEMENTS** |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See attached schedule A – Schedule of Forms |

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.



NOT A CERTIFIED COPY



## JAMES RIVER INSURANCE

September 09, 2019

**Via USPS Mail Delivery**
Shamis & Gentile, P.A.
14 NE 1st Ave, Suite 1205,
Miami, FL 33132

RE:    **ACKNOWLEDGEMENT OF LETTER OF REPRESENTATION**

          **Insured:**    **Rasier LLC; Rasier- CA LLC; Rasier- DC**
          **Claimant:**    **Lucas Silva**
          **File No.:**    **90061868**
          **Date of Loss: 07/30/2016**

Dear Andrew Shamis:

Thank you for your letter of representation, dated **September 06, 2019**, for the above-mentioned client(s).

It was deemed that your client's vehicle was a total loss for this accident. Our estimate team reviewed the damages to the 2009 Toyota Corolla and determined that the damages amounted to $15569.59 in total. A valuation was completed for the vehicle and amounted to $8822.21, which placed the vehicle as a total loss, as damages exceeded the value of the vehicle. On August 15, 2016 the file handler settled the total loss claim in the amount of $9401.54, minus the $1000.00 deductible for a total payout of $8401.54. Payment was issued in the total amount of $8401.54 on August 22, 2016 for the settlement of the 2009 Toyota Corolla.

We ask that you do not contact our insured's, its employees and/or agents.  If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 287-3715, Fax # (804) 420-1058 or via Email: Kelley.hare@jamesriverins.com.

Sincerely,

Kelley Hare
Claims Examiner

NOT A CERTIFIED COPY

**Claims Department**
**James River Insurance Company**
P.O. Box 27648 • Richmond, VA 23261 • 804.289.2700 • Fax 804.420.1058
www.jamesriverins.com

Andrew Shamis
September 09, 2019
Page 2 of 2

**Applicable in Florida and Idaho**

Any person who knowingly and with the intent to injure, defraud or deceive any Insurance Company files Statement of Claim containing any false, incomplete or misleading information is guilty of a felony.*

   *In Florida – Third Degree Felony



**EXHIBIT B**

# FAX COVER SHEET

| TO | |
|---|---|
| COMPANY | |
| FAX NUMBER | 17866230915 |
| FROM | Hare, Kelley |
| DATE | 2019-09-10 20:53:15 GMT |
| RE | Claim 90061868 for Lucas Silva |

## COVER MESSAGE

Please see all of the requested documents.

Regards,

Kelley Hare
Claims Examiner
James River Insurance Company
P.O. Box 27648, Richmond, VA 23261
Phone: 804-287-3715 | Fax: 804-265-1444
Email: Kelley.Hare@jamesriverins.com

NOT A CERTIFIED COPY





## Vehicle Valuation Report

Prepared for:

NOT A CERTIFIED COPY

| Summary |
|---|

### Claim Information

| | | | | |
|---|---|---|---|---|
| Claim Number: | 90061868 | | Version #: | 1 |
| Policy Number: | | | Coverage Type of Loss: | COLLISION |
| Insured: | Lucas Silva | | Loss Date: | 07/30/2016 |
| | | | Reported Date: | |
| | | | Valuation Report Date: | 08/09/2016 11:08:51 |
| | | | Valuation Report ID: | 9781345 |

### Vehicle Information

| | | | | |
|---|---|---|---|---|
| Loss Vehicle: | 2009 Toyota Corolla XRS 4 Door Sedan 2.4L 4 Cyl Gas M FWD | | Location: | FL 32765 |
| | | | Exterior Color: | Black Sand Pearl |
| VIN: | 1NXBE40E19Z018313 | | License Plate: | |
| Mileage: | True Mileage Unknown | | | |

### Valuation Summary

| | |
|---|---|
| Base Value: | $9,042.17 |
| **Loss Vehicle Adjustments** | |
| Condition Adjustment: | -$219.96 |
| Prior Damage Adjustment: | $0.00 |
| After Market Parts Adjustment: | $0.00 |
| Refurbishment Adjustment: | $0.00 |
| Market Value: | $8,822.21 |
| **Settlement Adjustments** | |
| (6.000%) Tax: | $529.33 |
| (1.000%, $5,000.00)Tax: | $50.00 |
| Settlement Value: | $9,401.54 |